IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHANIE UPSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 25-4226-BAH |
| JOHN DIPAULA ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Pro se plaintiff Stephanie Upson ("Plaintiff"), sues Diane D'Ambrosio Morris, the executive director of secondary schools for the Howard County Public School System, John DiPaula, the principal of Marriotts Ridge High School, and P.J. Cayo, the vice principal of Marriotts Ridge High School (collectively "Defendants"), in their individual capacities, alleging that she was removed from her position as a teacher and restricted from the campus of her children's school in violation of her due process rights under the Fourteenth Amendment. ECF 19 (second amended complaint).[1]

Pending before the Court is Defendants' motion to dismiss, ECF 25, to which Plaintiff filed a response, ECF 28. The Court has reviewed all relevant filings and finds that no hearing is necessary.[2] *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendant's motion to dismiss, ECF 25, is **GRANTED**.

---

[1] The original complaint is docketed at ECF 1.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

# I. BACKGROUND

## A. Factual Allegations[3]

Plaintiff Stephanie Upson was, at times relevant to this complaint, a teacher at Marriotts Ridge High School ("MRHS") within the Howard County Public School System ("HCPSS"). ECF 19, at 2 ¶ 9. There are three defendants: Diana D'Ambrosio Morris ("D'Ambrosio Morris"), the executive director of secondary schools for HCPSS; John DiPaula ("DiPaula"), the principal of MRHS; and P.J. Cayo ("Cayo"), the vice principal of MRHS. *Id.* ¶¶ 10–12. Plaintiff alleges that each defendant played a role in the investigation, suspension, and ultimate termination of Plaintiff, which, Plaintiff contends, violated the Fourteenth Amendment's Due Process Clause. *Id.* ¶ 13.

The Court reproduces the allegations as coherently as it can, though notes that Plaintiff's narrative is at times unclear and is not presented chronologically. Broadly, the complaint revolves around the process that unfolded in response to allegations against Plaintiff of inappropriate communications or conduct with children, seemingly stemming from complaints made by or regarding students with whom she had contact. *See, e.g.*, *id.* at 6 ¶ 47. Plaintiff seemingly had some disciplinary proceedings in the 2023–2024 school year, the outcome of which she appealed. *See id.* at 4 ¶ 27. Those proceedings were followed by what appears to be at least one new set of allegations in the 2024–2025 school year, leading to Plaintiff's eventual termination and the present action. *See id.* at 3 ¶¶ 15–16, at 4 ¶ 30.

---

[3] The facts provided in this section are taken from the operative complaint and are assumed to be true for the purposes of the pending motion to dismiss. *See Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850 n.1 (4th Cir. 2016) (citing *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

1. The February 2025 Reinstatement and Reversal

At some point prior to February 12, 2025, an "investigation of student messages and photographs was conducted," seemingly by HCPSS's Human Resources department. *Id.* at 3 ¶ 17. Apparently as part of that investigation, on January 31, 2025, Defendant Cayo questioned Plaintiff's minor child "regarding Plaintiff's classroom without parental notice to Plaintiff or her husband" and without disclosing how or whether that interview was used in forming allegations that would be brought against Plaintiff. *Id.* ¶¶ 14–15.

On February 12, 2025, Plaintiff was cleared to return to duty as a teacher, and she received notice of the same on February 14, 2025. *Id.* ¶¶ 16–17. However, after Plaintiff was cleared to return to the classroom, "[D'Ambrosio] Morris intervened and halted Plaintiff's scheduled return to duty." *Id.* ¶¶ 17–18. At the time D'Ambrosio Morris did so, however, there had been no new allegations or reports generated against Plaintiff, "rendering Defendants' reversal of Plaintiff's clearance unexplained and unsupported by any contemporaneous safety concern." *Id.* ¶ 19. Plaintiff was "provided no clear contemporaneous explanation for the reversal of her clearance, and only later was it characterized as an 'error,'" despite D'Ambrosio Morris having intervened as soon as Plaintiff was cleared to return. *Id.*

Plaintiff had also experienced "prior discipline" the year before, for which she had an appeal meeting on March 20, 2024. *Id.* at 4 ¶ 27. It was not until February 27, 2025, however, that Plaintiff received her confidential appeal decision, which was "transmitted to an unverified external email address, breaching confidentiality." *Id.* ¶ 29. On April 9, 2025, Plaintiff also received "the associated student statements" related to that prior discipline. *Id.* ¶ 28.

2. The March 3, 2025, Report

On March 3, 2025, "a new report was generated" that contained "new . . . allegations" against Plaintiff. *Id.* ¶¶ 30–31. Plaintiff was allegedly "not provided contemporaneous notice of the report, its contents, or any supporting statements prior to Defendants' reliance on it to continue her removal and escalate discipline, thereby depriving Plaintiff of any meaningful opportunity to understand or respond to the allegations." *Id.* ¶ 30. Plaintiff "repeatedly requested case status updates and information regarding" the new allegations, but Defendant allegedly failed to provide updates and did not "disclose the factual basis for their continued reliance on those allegations." *Id.* ¶ 31.

Following the March 3, 2025, report, Defendants permitted Plaintiff to "continue performing core instructional duties, including student grading and Canvas responsibilities, until approximately March 24, 2025." *Id.* at 5 ¶ 37. According to Plaintiff, her being allowed to continue core duties demonstrated that "no immediate threat existed." *Id.* ¶ 38. At some point after the March 3, 2025, report, DiPaula referred the matter to "child protective authorities based on suspected inappropriate communication." *Id.* at 6 ¶ 47.

3. The Substantiated Findings in Plaintiff's Record

At some point, Defendants "issued official substantiated findings accusing Plaintiff of violations of Maryland child-abuse law." *Id.* ¶ 51. Those findings were placed in Plaintiff's personnel file and internal employment records, "where they were relied upon to justify suspension and termination proceedings."[4] *Id.* This finding was allegedly made "despite no substantiated finding from Child Protective Services." *Id.*

[4] Plaintiff's complaint does not clarify when Defendants issued these findings. *See* ECF 19, at 6 ¶ 51. Chronologically in the complaint, Plaintiff's allegations regarding the substantiated findings come after reference to the two meetings she had with Defendants in June. *Id.* However, because

Plaintiff alleges she was not provided any advanced notice that Defendant would substantiate allegations of child-abuse law violations, was not provided the underlying evidence relied upon, and was never afforded a post-deprivation name-clearing hearing or any other forum to allow her to contest the accusations and clear her name. *Id.* ¶ 52. Plaintiff contends that these findings are maintained in her official employment record and are "likely to be disclosed to prospective employers and licensing authorities" and will jeopardize her future employment. *Id.* at 7 ¶¶ 53–54. The findings "directly implicate Plaintiff's fitness to work with minors and would be material to any prospective employer in the education field." *Id.* ¶ 56. Plaintiff "disputes the accuracy of these findings and alleges that they are false and unsupported." *Id.* ¶ 58. And although "Plaintiff participated in internal proceedings and arbitration, Defendants never provided a constitutionally adequate name-clearing hearing designed to allow Plaintiff to confront the stigmatizing accusations and clear her name." *Id.* ¶ 59.

4. <u>The June 12, 2025, Due Process Meeting</u>

On June 12, 2025, Plaintiff had a "due process meeting." *Id.* at 4 ¶ 32. It is unclear exactly who was in attendance. *See id.* According to Plaintiff, that meeting was the first time that Plaintiff received the March 3, 2025, allegations, and "she was expected to respond immediately without prior review of the evidence, witness statements, or investigative materials." *Id.*; *see also id.* at 6 ¶ 48. Defendants "relied on these allegations in making and sustaining the decision to remove Plaintiff from duty and impose unpaid suspension." *Id.* at 4 ¶ 33.

Plaintiff claims that Defendants' reliance on the March 3, 2025, allegations was misplaced because the "investigator did not interview any of the students whose statements or alleged

Plaintiff states that Defendants relied on these findings in making the decision to terminate her, the Court recounts these allegations before detailing the meetings in which Defendants apparently relied on the findings.

concerns formed the basis of the findings, and instead relied on secondhand reports and selected documentation." *Id.* at 5 ¶ 35. At the conclusion of the due process meeting, defendant DiPaula stated that he could not make the recommendation for termination, and instead that authority rested with defendant D'Ambrosio Morris. *Id.* at 6 ¶ 48.

5. The June 17, 2025, Outcome Meeting

On June 17, 2025, Plaintiff had an "outcome meeting." *Id.* at 3 ¶ 22. At that meeting, D'Ambrosio Morris communicated the recommendation that Plaintiff be terminated. *Id.* At the time D'Ambrosio Morris recommended termination, she stated that she had reviewed Plaintiff's response to the findings, presumably, of the investigation into Plaintiff. *Id.* ¶ 20. Plaintiff seemingly requested to share her written response to the findings during the June 17, 2025, outcome meeting, but D'Ambrosio Morris stated that doing so "wasn't the purpose of the meeting," and allegedly declined to discuss the facts. *Id.* ¶ 22.

Plaintiff then emailed her response to the findings directly to D'Ambrosio Morris. *Id.* ¶ 20. D'Ambrosio Morris responded to Plaintiff's email: "As shared in our meeting this morning, the due process meeting has already been held so today's meeting was to share the recommendation and formal letter with you. Therefore, the recommendation still stands and at this time, we will not be exploring other options." *Id.* ¶ 21.

6. The July 16, 2025, Suspension Without Pay Pending Termination

On July 16, 2025, Defendants imposed "retroactive suspension without pay pending termination, resulting in immediate loss of wages and benefits." *Id.* at 6 ¶ 49. Each defendant allegedly participated in or contributed to the decision to remove Plaintiff from duty and impose an unpaid suspension "through their respective roles in initiating, advancing, or approving disciplinary action." *Id.* ¶ 50.

7. The Arbitration Proceedings

At some point after Plaintiff's suspension without pay, Plaintiff had an arbitration meeting.[5] *Id.* at 5 ¶¶ 40–41. In preparation for that arbitration, "Defendants excluded all March 3, 2025, and subsequent investigative materials from their exhibit list, despite having relied on those materials to justify Plaintiff's continued removal and escalation of discipline." *Id.* ¶ 40. Plaintiff alleges that this demonstrates "shifting justifications and post-hoc rationalization for Plaintiff's deprivation of pay and status." *Id.* At the arbitration meeting, Defendants asserted that the recommendation for Plaintiff's termination was based solely on evidence reviewed prior to Plaintiff's February 12, 2025, clearance to return to duty, which Defendants characterized as a mistake. *Id.* ¶ 41. However, at the June 12, 2025, due process meeting, Defendants also relied on the March 3, 2025, report to support Plaintiff's removal, which "further demonstra[tes] shifting justifications and the absence of a clearly defined evidentiary basis for the deprivation." *Id.*

Testimony at the arbitration meeting indicated that Defendant Cayo had a phone conversation with an individual described as a "community member" as part of the investigation into the allegations against Plaintiff. *Id.* at 6 ¶ 44. However, Plaintiff alleges that the individual described as a community member was actually an HCPSS employee, which was not disclosed to Plaintiff and limited her ability to assess the witness's credibility and bias. *Id.* at 5–6 ¶ 43. Plaintiff alleges that the withholding of this information, along with other actions by Defendants, reflects "a pattern of withholding critical information, preventing meaningful response, and justifying adverse action after the fact." *Id.* at 6 ¶ 45.

[5] At least one arbitration meeting seems to have happened on or around February 26, 2026, because the complaint references "sworn arbitration testimony" by D'Ambrosio Morris on that date. *See* ECF 19, at 3 ¶ 22; *see also id.* at 9 ¶ 76 (stating the arbitration meeting "occurred months after the deprivation").

8. Plaintiff's Restricted Access to MRHS

Plaintiff is also the parent of two students who, at the time the complaint was filed, were enrolled at MRHS. *Id.* at 8 ¶ 63. Since January 2025, Defendants have allegedly imposed and maintained restrictions on Plaintiff's ability to access MRHS school property. *Id.* ¶ 64. Those restrictions were applied categorically and "without any individualized determination of current safety risk," even though the students referenced in prior allegations against Plaintiff no longer attended MRHS after the conclusion of the 2024–2025 school year. *Id.* ¶¶ 65–66.

On March 21, 2026, Plaintiff requested permission to attend an athletic event at MRHS for her son scheduled for March 24, 2026, and offered to comply with any reasonable conditions for attendance. *Id.* ¶¶ 67–68. On March 23, 2026, HCPSS denied the request through Defendant representatives, but did not provide any justification or individualized assessment. *Id.* ¶ 69. Instead, Plaintiff alleges the denial "was issued after consultation with the "'Division of Schools,' reflecting the restriction remains an active, system-level decision rather than a site-based determination." *Id.* ¶ 70. Plaintiff continues to be restricted from accessing the property, based on "substantiated findings that Plaintiff contends were imposed without constitutionally adequate notice or opportunity to respond." *Id.* ¶ 73. Plaintiff has had no opportunity to challenge or lift the restrictions. *Id.* ¶ 74.

**B. Procedural History**

Plaintiff brings three counts under 42 U.S.C. § 1983. Count I alleges a violation of Plaintiff's procedural due process rights under the Fourteenth Amendment. *Id.* at 9–10 ¶¶ 77–87. Count II presents a stigma-plus claim under the Fourteenth Amendment. *Id.* at 10–11 ¶¶ 88–97. Count III alleges that Plaintiff was deprived of her fundamental parental rights under the Fourteenth Amendment. *Id.* at 11–12 ¶¶ 98–107.

Plaintiff filed her original complaint on December 22, 2025, ECF 1, before filing an amended complaint on February 6, 2026, ECF 5. On March 25, 2026, Plaintiff filed a second amended complaint, which is the operative complaint. ECF 19. Plaintiff has twice moved for a temporary restraining order, ECF 10, ECF 20, and the Court has denied both of those motions, ECF 11, ECF 27. Defendants filed the pending motion to dismiss on April 8, 2026, ECF 25, and Plaintiff responded, ECF 28.

## II. <u>LEGAL STANDARD</u>

### A. Pro Se Litigants

The Court must construe a *pro se* litigant's complaint liberally. *See Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Bell v. Bank of Am., N.A.*, Civ. No. RDB-13-0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a complaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." (quotations omitted)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Pardus*, 551 U.S. at 94; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS[6]

### A. Count I

Plaintiff brings Count I for deprivation of her "protected property interest in continued employment and pay arising from her status as a contract public school teacher and from Maryland law governing that employment relationship" in violation of the Fourteenth Amendment's due process clause. ECF 19, at 9 ¶ 78.[7]

[6] Because the Court finds Plaintiff has failed to state a claim for relief, it does not reach Defendants' arguments regarding qualified immunity, whether Plaintiff is entitled to punitive damages, and whether Plaintiff is entitled to injunctive relief. *See* ECF 25-2, at 17–19.

[7] In response to the motion to dismiss, Plaintiff attaches six exhibits in support of her argument. *See* ECF 28-1–28-4. The Court notes, however, that "a plaintiff 'cannot, through the use of motion briefs, amend the complaint.'" *Wilson v. Detweiler*, Civ. No. SAG-20-869, 2020 WL 4053827, at *4 (D. Md. July 20, 2020) (quoting *Mills v. State Hwy. Admin.*, Civ. No. PWG-13-3727, 2015 WL 72270, at *3 (D. Md. Jan. 5, 2015)). Consequently, for the purposes of the pending motion to dismiss, the Court only considers the allegations in the complaint, ECF 19.

"Procedural due process applies only to the deprivation of liberty and property interests that the Fourteenth Amendment encompasses." *Rockville Cars, LLC v. City of Rockville, Md.*, 891 F.3d 141, 145 (4th Cir. 2018) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). To establish a procedural due process claim, a plaintiff must show (1) that they had a protected liberty or property interest; (2) of which the defendant deprived them; and (3) without due process of law. *Id.* (citing *Tri City Paving, Inc. v. Ashe City*, 281 F.3d 430, 436 (4th Cir. 2002)).

As an initial matter, Plaintiff makes various allegations of Defendants' wrongdoing throughout the complaint, making the precise timeline of the deprivation for which she sues difficult to ascertain. Ultimately, however, the Court understands the core deprivation of which Plaintiff complains to be her July 16, 2025, suspension without pay and the process that precipitated that suspension. *See* ECF 19, at 6 ¶ 49. From what the Court can ascertain, though Plaintiff may have been suspended with pay at various points prior, the July 16, 2025, suspension was the first time that Plaintiff's pay was affected. *Id.* To the extent that Plaintiff alleges she was deprived of a right prior to her suspension without pay in July 2025, it is well established that suspending an employee with pay does not constitute a due process violation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45 (1985) (holding that "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the [due process] problem by suspending with pay"); *see also Mansoor v. Cnty. of Albemarle*, 124 F. Supp. 2d 367, 380 (W.D. Va. 2000) (holding that "because the plaintiff's suspension was 'with pay,' instead of without pay, he could not have been deprived of federal due process" (internal quotations and ellipses omitted)); *Royster v. Bd. of Trs. of Anderson Cnty. Sch. Dist. No. Five*, 774 F.2d 618, 621 (4th Cir. 1985) (holding that any "constitutionally protected property interested" an employee has from an employment contract is "satisfied by payment of the full compensation due under the

contract"); *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) ("[T]he property interest is more generally in continued employment, and no deprivation exists so long as the employee receives payment of the full compensation due under the contract." (internal quotation omitted)). The Court thus considers whether Plaintiff has adequately alleged that she was deprived of her protected property interest without due process of law.

1. <u>The Parties' Arguments</u>

Defendant moves to dismiss Count I on the basis that even if Plaintiff's suspension without pay deprived her of a protected liberty interest, Plaintiff was provided adequate process. ECF 25-2, at 8–12. Defendant argues that Plaintiff's allegations "show that she was given multiple opportunities to respond to the allegations and investigation into her conduct prior to being deprived of her property interests." *Id.* at 10. Specifically, Defendants note, Plaintiff's complaint shows that she had received an appeal decision related to student statements made in connection with prior discipline in February 2025, and received the student statements in April 2025. *Id.* Further, Defendants note that given Plaintiff's clearance to return to work in February 2025 followed by the revocation of that clearance, Plaintiff had "advanced notice of not only the investigation, but even the nature of that investigation into her conduct, all prior to her June 12, 2025[,] hearing." *Id.* at 9. Plaintiff then allegedly learned of the March 3, 2025, allegations at the June 12, 2025, due process meeting, "where she had an opportunity to respond immediately as to the allegations," followed by an opportunity to respond in writing, which Plaintiff alleges that D'Ambrosio Morris reviewed prior to the recommendation for termination. *Id.* at 10. Taken together, Defendants contend, Plaintiff's allegations "clearly support that not only did she have advance notice of the investigation into her conduct and knowledge as to the nature of the same,

but also she admits that she did have opportunities to respond to the allegations and she even did so." *Id.* at 10–11.

In response, Plaintiff argues that Defendants' motion "conflates nominal participation with constitutionally meaningful process." ECF 28, at 3. Plaintiff contends that "the actual process employed was constitutionally deficient because critical allegations, factual bases, and investigative developments evolved over time and were not timely or meaningfully disclosed before deprivation occurred." *Id.* Specifically, Plaintiff objects that "Defendants did not contemporaneously disclose the internal decision-making communications, evolving factual bases, and disputed rationale underlying the reversal of clearance, continuation of restrictions, and later deprivation." *Id.* Ultimately, Plaintiff contends, "the process employed was not meaningfully designed to permit Plaintiff to understand and respond to the actual factual bases underlying the stigmatizing findings and deprivation ultimately imposed." *Id.* at 5.

2. Analysis

Once a plaintiff establishes that they were deprived of a protected liberty interest, the key question is whether the deprivation occurred without due process of law—that is, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). At the same time, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481.

"[W]hen a state has created a property interest in employment, the process by which a decision to terminate that employment is made must satisfy the requirements of the procedural

prong of the Due Process Clause of the Fourteenth Amendment." *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1463 (4th Cir. 1990). The Supreme Court has "held that some form of pretermination hearing is required, but that hearing 'need not be elaborate.'" *Id.* (quoting *Loudermill*, 470 U.S. at 545). Instead, it "can be informal and does not need to 'resolve the propriety of the discharge.'" *Smith v. Comm'rs. of St. Mary's Cnty., Md.*, 2023 WL 4399222, at *3 (4th Cir. 2023) (quoting *Linton v. Frederick Cnty. Bd. of Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992)). Instead, that pretermination hearing must serve as "an initial check against mistaken decisions." *Loudermill*, 470 U.S. at 545. Essentially, "the employee facing termination is 'entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Riccio*, 907 F.2d at 1463 (quoting *Loudermill*, 470 U.S. at 546). The Court, then, "focus[es] on whether [Plaintiff] received oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story before [she] was terminated." *Id.*

There is no question that Plaintiff received oral notice of the charges against her at the June 12, 2025, meeting. *See* ECF 19, at 4 ¶ 32 (noting that Plaintiff "received the allegations for the first time during the meeting"). Plaintiff then allegedly had an opportunity to respond and present her side of the story, both in person at the June 12, 2025, meeting, *see id.* (noting Plaintiff was expected to respond in the moment), and in writing, *see id.* at 3 ¶¶ 20–21 (noting Plaintiff responded to the findings in writing and D'Ambrosio Morris reviewed Plaintiff's written responses).

Whether Plaintiff received "an explanation of the employer's evidence," *Riccio*, 907 F.2d at 1463, is a thornier question, but the Court ultimately finds that Plaintiff's allegations establish that she had fair notice of the evidence against her. Plaintiff objects that she did not receive

contemporaneous notice of the charges and investigation against her, that the investigation and basis for termination evolved over time, and that she could not adequately respond to the charge. *See* ECF 28, at 3–5. However, the Fourth Circuit has noted that the Supreme Court's decision in "*Loudermill* does not impose on the government employer the burden to perform all pretermination acts that could benefit the employee subject to discharge[,]" even when such acts could further the interests of fairness. *Riccio*, 907 F.2d at 1464.

To the extent Plaintiff objects that she was not provided with all the evidence against her, the Fourth Circuit has held that "[d]ue process does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit [Plaintiff] to identify the conduct giving rise to the dismissal and thereby to enable [her] to make a response." *Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs.*, 964 F.2d 1436, 1440 (4th Cir. 1992). The process afforded to Plaintiff, as alleged by Plaintiff herself, satisfies that standard. Indeed, Plaintiff alleges that she *did* receive notice of the March 3, 2025, allegations at the June 12, 2025, due process hearing. ECF 19, at 4 ¶ 32. And even before that meeting, Plaintiff was aware of the nature of the charges against her, having gone through an appeals process related to similar allegations from the previous school year, *id.* ¶ 27, and having been told in February 2025 that there was an "investigation of student messages and photographs," *id.* at 3 ¶ 17. Having had at least some notice of the allegations against her prior to June 12, 2025, and then receiving a fuller account of those allegations on June 12, 2025, Plaintiff then responded in writing to the allegations.[8] *Id.* ¶¶ 20–21. Even Plaintiff's objection that Defendants proceeded through the

[8] To the extent that Plaintiff alleges a due process violation in the length of time afforded to argue her position or to provide a response, it bears noting that "[e]ven a simple telephone call offering an employee the opportunity to discuss a discharge may satisfy pre-termination hearing requirements." *Hanton v. Gilbert*, 842 F. Supp. 845, 853 (M.D.N.C.), *aff'd*, 36 F.3d 4 (4th Cir. 1994) (citing *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir.1985)).

disciplinary process with the intention of terminating Plaintiff's employment, *see* ECF 19, at 4 ¶ 26, is unavailing, as the Due Process Clause does not require that a decisionmaker refrain from drawing conclusions before providing the employee an opportunity to be heard. *See Buschi*, 775 F.2d at 1256 (holding that an employer's "forecast[ing] of the outcome of the [pretermination hearings] did not foreclose [Plaintiff's] rights").

Plaintiff also raises the question of which evidence Defendants actually relied upon to terminate Plaintiff, and whether Plaintiff had fair notice of the basis for her termination. Specifically, Plaintiff alleges that in the arbitration proceedings that unfolded following Plaintiff's termination, Defendants asserted that the recommendation for her termination was due to the allegations against her from the 2024–2025 school year, rather than the March 3, 2025, allegations. ECF 19, at 5 ¶ 41. However, Plaintiff's complaint makes clear that Plaintiff was provided notice and opportunity to be heard on both the 2024–2025 school year allegations *and* the March 3, 2025, allegations. *See id.* at 4 ¶ 27 (describing Plaintiff's appeal of previous disciplinary action), at ¶ 32 (describing June 12, 2025, due process meeting); *see also Linton*, 964 F.2d at 1441 (noting that as long as "the core charges giving rise to the termination are detailed," and "[i]n the absence of any evidence that the specific charges were a pretext to conceal the real cause of termination or that the employee was actually confused at the time [s]he was given notice," additional "generalized language is no more than harmless surplus"). In other words, regardless of which allegations Defendants relied upon, Plaintiff has effectively alleged that she was given notice and opportunity to be heard on both sets of allegations prior to her suspension without pay.

As for the post-deprivation proceedings, Plaintiff has not made specific allegations with respect to the inadequacy of that process beyond contending that it was insufficient. ECF 19, at 4 ¶ 25. However, Plaintiff details the arbitration in which she is currently (as of the filing of the

complaint) participating following her termination. *See, e.g.*, ECF 19, at 7 ¶ 59. Based on Plaintiff's allegations, the arbitration proceedings appear to be at least somewhat robust, involving the preparation of exhibit lists and investigative materials. *See id.* at 5 ¶¶ 40–41. On this count, Plaintiff has not offered any authority or allegation that the arbitration is a constitutionally inadequate post-termination procedure.

Ultimately, Plaintiff's allegations show that she was provided "'oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story'" preceding her suspension without pay, *Riccio*, 907 F.2d at 1463 (quoting *Loudermill*, 470 U.S. at 546), followed by a post-deprivation arbitration process in which she was participating as of the filing of the complaint. Accordingly, the allegations, taken as true, establish that Plaintiff received the process due to her under the Fourteenth Amendment, and Count I will be dismissed.

**B. Count II**

"The Supreme Court has acknowledged a constitutional liberty interest in one's reputation." *Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) (citing *Kerry v. Din*, 576 U.S. 86, 91–92 (2015)). When "reputational injury is accompanied by a state action that distinctly altered or extinguished the plaintiff's legal status, such as termination of public employment, a due process claim arises." *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 731 (D. Md. 2013) (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) (internal quotation marks and brackets omitted)). "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007).

If a plaintiff can prove such a deprivation of their liberty interest in their reputation, they must then "demonstrate that [their] liberty was deprived without due process of law." *Cannon v. Village of Bald Head Island, N.C.*, 891 F.3d 489, 501 (4th Cir. 2018) (quoting *Segal v. City of N.Y.*, 459 F.3d 2077, 213 (3d. Cir. 2006)). "To that end, the Supreme Court has recognized that, when a governmental employer places an employee's reputation 'at stake' by publicly disclosing defamatory charges, 'notice and opportunity to be heard are essential.'" *Id.* (quotation omitted). "Such a hearing allows a former employee "to 'clear [their] name' against [the] unfounded charges." *Id.* (quoting *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (second bracket in original)).

Even assuming that Plaintiff has alleged facts establishing that the charges against her placed a stigma on her reputation, were made public by her employer and in connection with her termination, and were false, the Court has already found that she was afforded constitutionally adequate process in her suspension and eventual termination. Consequently, Plaintiff's claim fails to adequately allege that she was deprived of her liberty interest in her reputation without due process of law, and Count II will also be dismissed.

### C. Count III

In Count III, Plaintiff alleges that Defendants have deprived her of her fundamental parental rights under the Fourteenth Amendment by restricting her access to MRHS's campus without an individualized determination that she poses a safety threat and by imposing restrictions that "are not narrowly tailored and are broader than necessary to serve any legitimate government interest." ECF 19, at 11 ¶¶ 100–03.

"[T]he Supreme Court has stated consistently that parents have a liberty interest, protected by the Fourteenth Amendment, in directing their children's schooling." *Herndon by Herndon v.*

*Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 179 (4th Cir. 1996). However, "[t]he right [to direct a child's education] refers to parental control over the content of a child's education and the type of school they attend, not a parent's ability to be physically present at school activities." *Pennington v. Taylor*, 776 F. Supp. 3d 1118, 1160 (M.D. Ala. 2025) (citing *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534 (1925)). Further, "[s]chool officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999); *see also Carey v. Brown*, 447 U.S. 455, 470–71 (1980) (explaining the Constitution does not leave state officials powerless to protect the public from threatening conduct that disturbs the tranquility of schools).

In *Lovern*, the Fourth Circuit affirmed dismissal of a case in which the plaintiff alleged he was unconstitutionally banned from his children's school. 190 F.3d at 651–52. The school allegedly barred the plaintiff from accessing campus "due to his continuing pattern of verbal abuse and threatening behavior towards school officials, including staff and School Board members." *Id.* at 652 (internal quotation omitted). The Fourth Circuit held that because the school only sought to affect the plaintiff's conduct on school property, and because the school had concluded that the plaintiff's behavior constituted a continuing pattern of verbal abuse and threatening behavior, the prohibition did not implicate the plaintiff's constitutional rights. *Id.* at 656. Similarly, here, Plaintiff alleges that she has been restricted from campus, and in particular from "events open to parents and families, including her children's athletic events." ECF 19, at 11 ¶ 100. Plaintiff also alleges that MRHS "issued official substantiated findings accusing Plaintiff of violations of Maryland child-abuse law." *Id.* at 6 ¶ 51. And though Plaintiff vigorously objects to those

substantiated findings, so too did the *Lovern* plaintiff object to the basis for his prohibition from campus. *See* 190 F.3d at 652. The Court cannot conclude here, any more than in *Lovern*, that the plaintiff's constitutional rights have been implicated by her restriction from campus pursuant to a substantiated finding of child abuse law violations.

Even if Defendants *had* deprived Plaintiff of her parental rights by restricting her access to campus, however, Plaintiff's claim still fails under the appropriate level of scrutiny. Assuming arguendo that the Fourteenth Amendment protects Plaintiff's right to attend her children's sporting events, "most due process challenges to public school policies are subject only to rational basis review." *Mahmoud v. McKnight*, 102 F.4th 191, 217 (4th Cir. 2024) (citing *Herndon*, 89 F.3d at 177–79), *rev'd and remanded on other grounds sub nom. Mahmoud v. Taylor*, 606 U.S. 522 (2025). "Except when the parents' interest includes a religious element, however, the [Supreme] Court has declared with equal consistency that *reasonable* regulation by the state is permissible even if it conflicts with that interest. That is the language of rational basis scrutiny." *See Herndon*, 89 F.3d at 179. Plaintiff seems to concede as much in response, noting that "schools retain substantial authority to regulate access to school property and maintain student safety," while arguing that "governmental restrictions affecting parental participation must still bear a rational relationship to legitimate governmental interests and may not be implemented through arbitrary or wholly non-transparent procedures." ECF 28, at 9.

"Rational basis review 'requires only that the [challenged state action] be shown to bear some rational relationship to legitimate state purposes.'" *Gottesman v. Bd. of Educ. of Montgomery Cnty.*, Civ. No. DKC-25-1682, 2026 WL 574975, at *18 (D. Md. Mar. 2, 2026). (alteration in original) (quoting *Herndon*, 89 F.3d at 177); *see also S.A. Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40 (1973)). "Under this deferential standard, the plaintiff bears the burden

'to negate every conceivable basis which might support' the [challenged state action]." *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Plaintiff has not alleged facts establishing that her restriction from campus violates rational basis review. Plaintiff argues that Defendants "routinely issued delayed denials" of her requests to attend school event, and regularly failed to provide substantive explanations regarding how decisions were made. ECF 28, at 10. But as discussed, Plaintiff has pleaded that a formal, substantiated finding of child abuse was entered against her and that her physical presence is restricted from the specific school where her employment was suspended. ECF 19, at 6 ¶ 51. Though, again, Plaintiff objects to the finding against her and to the process through which the allegations were substantiated, she has nonetheless failed to plead that her restriction from campus does not bear some rational relationship to a legitimate state purpose. Accordingly, Count III will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF 25, is **GRANTED**. A separate implementing order will issue.

Dated: November 16, 2026

/s/
Brendan A. Hurson
United States District Judge